·(9 Misc. Rep. 558.)

## CANARY et al. v. RUSSELL.

(Supreme Court, Special Term, Kings County. August 15, 1894.)

1. CONTRACTS—INTERPRETATION—DURATION OF THEATRICAL CONTRACT.

   Where a theatrical star contracts with theatrical managers to perform for them for two theatrical seasons (the first commencing November, 1893, and continuing to June, 1894, and the second commencing October, 1894, to June, 1895), although the contract contains a negative covenant "that during the continuance of said contract the said star will not perform, or give any exhibition of her talents, at any place or for any persons other than the said theatrical managers," *held,* that the fair meaning of the parties should control, and that the contract did not cover the summer months, and that it would be a too restricted interpretation of the words, "the continuance of this contract," to hold that the star was restrained from singing during the summer months under any other management than the plaintiffs'.

2. SAME—ACTION FOR BREACH—DEFENSES.

   Further, *held,* that representations made by plaintiffs, which did not constitute material inducements to enter into the contract, cannot be urged as a defense for a breach thereof on the part of the defendant.

3. INJUNCTION—BREACH OF NEGATIVE COVENANTS.

   Further, *held* that, although an injunction for the enforcement of a negative covenant will not ordinarily be granted before a full inquiry into the facts has been had, by means of a trial, still the jurisdiction of the court to grant an injunction for the enforcement of a covenant not to perform for rival managers is well established, and can always be invoked in a proper case.

Action by Thomas Canary and George W. Lederer against Lillian Russell. Plaintiffs move to continue a preliminary injunction restraining defendant from singing, playing, performing, dancing, or in any way or manner exercising her talents, upon any stage, or with any organization, or for herself, or any person or persons or company, or in any operatic entertainment, under any management other than the plaintiffs'.

Ira Leo Bamberger, for plaintiffs.

Olin, Rives & Montgomery, for defendant.

BARTLETT, J. The preliminary injunction in this case should be modified so as not to restrain the defendant from singing and playing up to the 1st of October next, but should be continued in full force and effect from that date, during the pendency of the action. The reason why the injunction should be modified is that the provision in the contract whereby the defendant undertakes not to perform for any other persons than the plaintiffs, without their written consent, seems to apply only to the two separate dramatic seasons which are specified in the agreement, and not to the summer interval between those seasons. The contract provides in the first place for a season commencing on or about the 20th day of November, 1893, and continuing until about June 1, 1894. Then it provides for a privilege of renewal for a season beginning about October 1, 1894, and terminating about June 1, 1895, for the same terms and conditions as the present contract. The negative covenant is in these words:

"It is further understood and agreed that during the continuance of this agreement said party of the second part will not perform, or give any exhibition of her talents, at any place or for any persons other than the said parties of the first part, without their consent in writing first had and obtained."

In behalf of the plaintiffs, it is urged that the clause, "during the continuance of this agreement," is broad enough to prevent the defendant from giving any performance whatever during the summer months without their permission. It seems to me, however, that this is too restricted an interpretation of the language, and that the fair meaning of the parties was that, during each season in which Miss Russell was bound to serve Canary and Lederer, she would not, without their consent, sing or play for any one else. The more important question, however, which is presented by the motion to continue the preliminary injunction herein, is whether the plaintiffs are entitled to restrain the defendant, under this negative covenant, for the period of the second season contemplated by the contract; that is to say, from the 1st of October to the 1st of June, next. In considering that question we find—First, a contract between the parties for one season, with the privilege of renewal for a second season on giving written notice; second, performance by the defendant under that contract for the first season; third, the receipt by her of upwards of $27,000; fourth, the giving of the prescribed notice entitling the plaintiffs to a second season; and, fifth, declaration by the defendant to the effect that she will not sing

for plaintiffs during a second season. The defendant seeks to justify her course in such refusal by urging: First. False representations on the part of Lederer, which induced her to enter into the contract; these representations being that Lederer was a partner with Canary, and that Lederer and Canary owned the lease of the theater known as the "Casino," in New York. Second. Breach of the contract, in that Lederer did not always accompany the troupe, and devote his entire time and attention thereto; that he in some way assigned, transferred, and let out his interest in the contract; and that the plaintiffs have been unable to secure a renewal of the lease of the Casino, and have not secured any other theater, or requested the defendant to select one.

The proofs before me do not sustain the position of the defendant on any of these points. I have great doubt whether the alleged representations were in fact made by Lederer; but, if they were, it is difficult to see how they can have constituted material inducements to enter into the agreement, or how their falsity has injured the defendant. The last article of the contract ought to have been notice to her that there was no partnership. It could not be a matter of any consequence whether Lederer owned the lease of the Casino in conjunction with Canary, so long as Canary was in a position to control it, as he appears to have been. The failure of Lederer to accompany the troupe seems to have occurred on one occasion only, when he was ill. The notion that he had in some way transferred his interest in the contract appears to be based wholly on statements which he made in supplementary proceedings in the city court of New York. These were undoubtedly careless, and perhaps they might be more harshly criticised, without injustice; but, in view of the other evidence in the case, they afford no basis for the conclusion, as matter of fact, that Lederer had made any such transfer or assignment as is alleged. The inability of the plaintiffs to secure a renewal of the lease of the Casino, and the fact that they have not secured any other theater, and have not requested the defendant to choose any other, are referred to in the answer as reasons why she should be allowed to refuse further fulfillment of the contract. Mr. Canary, however, swears that he now has a lease of the Casino from the receivers, which will last until November 20, 1894. As to the neglect to procure any other theater, under the nineteenth article of the contract, it will be time enough for the defendant to complain on that ground when she evinces a willingness to fulfill the agreement on her part.

The jurisdiction of the court, in the case of an actor or actress, to grant an injunction for the enforcement of an agreement not to perform for rival managers, is now too well established to require the citation of authorities to support it. It is nevertheless true that a restraining order of this sort, before there has been a full inquiry into the facts, by means of a trial, should be made only where the case in favor of the complainant, upon the proofs presented to the court, is reasonably free from doubt. It seems to me that this is just such a case. The impression made upon my mind by a careful reading of all these affidavits is that the defendant has been seeking.

some plausible pretext to avoid the fulfillment of a contract which has been substantially performed in good faith on the part of the plaintiffs. The injunction will be modified to the extent already indicated, and, as thus modified, will be continued during the pendency of the action; costs to abide event.